UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re WELLS FARGO RESIDENTIAL MORTGAGE LENDING DISCRIMINATION LITIGATION | No. C 08-1930 MMC  (JL) |
| | **ORDER** |
| This Document Relates To: | |
| ALL ACTIONS | |
| _____/ | |

**Introduction**

All discovery in this case has been referred to this Court by the district court (Hon. Maxine M. Chesney) pursuant to 28 U.S.C. §636(b). The Court heard oral argument on the issue of Defendant's claim of privilege for its loan methodologies and permitted additional briefing at the parties' request. Andrew Friedman, Bonnett Fairbourn Friedman & Balint, P.C., Phoenix, Arizona; Gary Klein,  and Willow Radcliffe appeared for Plaintiffs. Tyree Jones and David Reidy appeared for Defendants. The matter was submitted. The Court hereby grants in part Plaintiffs' motion to compel production of documents related to Wells Fargo's loan methodologies, as discussed in more detail below. Wells Fargo shall produce to the Court for in camera review 268 pages of documents responsive to Plaintiffs' narrowed request for which it claims attorney-client or work product privilege. In addition, Wells shall provide a declaration under penalty of perjury that these pages constitute a representative sample of the 268,000 pages of documents for which Wells claims privilege.

In addition, Wells shall produce to Plaintiffs all documents for which it relies solely on the bank examiner privilege, with the exception of documents created by the Office of the Comptroller of the Currency ("OCC"). Wells shall produce to Plaintiffs and e-file with the Court a Final Supplemental Privilege Log. Any claim of privilege shall be waived for any document not listed on this or previous logs. Compliance with this Order is due within two weeks of its issuance.

## Discovery in Dispute

Plaintiffs requested an order for production of all documents responsive to their Requests for Production of Documents Numbers 23 and 39, that relate to the methodologies developed and used during the class period by Wells Fargo in conducting its internal fair lending analysis on loans (both prime and nonprime), made through its retail (loan officer), wholesale (brokers) and correspondent lender channels. The Court at the hearing on this motion granted most of Plaintiffs' requests but Defendants requested an opportunity to brief its claims of privilege for loan methodology documents, which the Court granted. (See Minute Order at Docket # 64) These include documents that deal with the design and implementation of all statistical regression modeling studies Wells Fargo performed on prime and nonprime loans made through its three lending channels. These are documents relating to the methodologies which were employed by Wells Fargo's Modeling Team: procedure manuals, the modeling documentation and modeling notes discussed by Ms. Tamara Denton in her deposition, all communications between the Modeling Team and Ms. Denton as well as any other Wells Fargo representative who was not an attorney in Wells Fargo's Law Department, or any non-Wells Fargo person or entity other than outside legal counsel.

Plaintiffs did not brief the issue of any privilege attached to the results of fair lending analyses, or of any summaries or interpretations of such results or of any communications directly to or from attorneys in the Law Department discussing the results of fair lending analyses. Plaintiffs express their belief that such documents either are not privileged, or that any privilege has been waived by Wells Fargo by its failure to list these documents in

its Privilege Log. Plaintiffs argue that Wells Fargo has waived any privilege for these documents, in two ways, by failing to list them on its Privilege Log and by citing them in support of an affirmative defense, that it implements fair practices in its mortgage lending.

Plaintiffs further refined their discovery request in their Response to Defendants's supplemental brief on privilege: "Plaintiffs seek *only* those documents that relate to the work of the Modeling Team. These documents include the raw statistical data produced by periodic regression modeling runs performed during the class period, the modeling documentation and modeling notes that describe the modeling runs and the methodologies used in them, and communications between members of the Modeling Team and other non-lawyer persons (Wells Fargo personnel or outside third parties) about the modeling runs." Plaintiffs' Reply at 1:3-8. (Emphasis in original) Plaintiffs argue that "*None* of this information constitutes privileged attorney-client communications. The statistical regression data and modeling notes is factual information to which the attorney-client privilege does not apply. The communications are between non-lawyers and therefore also non-privileged." *Id.* at 1:9-12.

Wells Fargo estimates that there are 268,000 documents responsive to Plaintiffs' request for which it claims privilege. Wells claims it is unable to reduce its estimate even in response to Plaintiffs' narrowed request. (Letters to this Court from Wells counsel Tyree Jones e-filed at Docket Numbers 117 and 127). The Court is skeptical of this contention, and Wells' second letter did not really respond to the Court's question regarding how the Plaintiffs' narrowed request might reduce the number of responsive documents, but merely repeated Wells' previous arguments that the documents are privileged. However, the Court does not have the documents before it, nor does it have the time or the resources to review 268,000 pages.

**Plaintiffs Allege Defendant has Waived Privilege by Failure to List Documents on Privilege Log**

Wells Fargo argues in response that it did indeed list loan methodology documents in its Privilege Log; Plaintiffs merely failed to cite the pertinent portions to the Court. Wells

also asserts its right to supplement or augment its Privilege Log without waiver. (Def. Opp. At 5-6), citing *Burlington Northern & Santa Fe Ry. Co. V. U.S.D.C. Montana*, 408 F.3d 1142, 1147 (9th Cir. 2005). Wells Fargo argues that its Privilege Log clearly identifies documents reflecting the statistical modeling notes and fair lending analysis now sought by Plaintiffs. Wells claims these documents are indisputably the subject of communications with the Law Department and are therefore privileged.

Wells Fargo also notes that the methodologies at issue are included in reports to legal counsel, as reflected in the Privilege Log. Further, the statistical models and formulas are developed by the Fair Lending Testing and Analytics Team ("FLT & AT"), a full-time fair lending manager and a group of statistical modelers and fair lending analysts, who work at the direction of, and in conjunction with, Law Department attorneys dedicated to fair lending. The statistical methodologies developed by the FLT & AT analyze Wells Fargo's loan level data to gather results that inform legal counsel's advice regarding fair lending issues. As discussed below, Wells must produce a Final Supplemental privilege Log or waive claim of privilege for all unlisted documents.

**Waiver by Citing in Support of Affirmative Defense**

Plaintiffs also argue that Wells Fargo has waived any privilege for these documents by citing them in support of an affirmative defense that it implements fair practices in its mortgage lending. In *Fox v. California Sierra Financial Services,* a court in this district held: "By asserting affirmative defenses, defendants have placed the information supporting those affirmative defenses at issue in this lawsuit. The general rule is that placing privileged communications at issue in a lawsuit waives the privilege for such communications."

> To waive the attorney-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case. Most often, this occurs through the use of an *affirmative defense*. (emphasis added).

*Fox,* 120 F.R.D. 520, 530 (N.D.Cal.,1988), citing *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1099 (7th Cir.1987).

Courts in the Ninth Circuit have adopted the following test to determine whether an implied waiver of the attorney-client privilege has occurred:

> [A]n implied waiver of the attorney-client privilege occurs when (1) the party asserts the privilege as the result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense.

*Home Indemnity Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995); see also *Genentech, Inc. v. Insmed Inc*, 236 F.R.D. 466, 468 (N.D.Cal. 2006). In this case, however, Plaintiffs cannot prove any of these three requirements, and therefore Wells Fargo has not waived its attorney-client privilege and the methodological materials covered by the attorney-client privilege are protected from discovery. First, Wells Fargo has not asserted the privilege as a result of some affirmative act or put the privileged information at issue. It is true, certainly, that Wells Fargo's Law Department has developed means to monitor and ensure compliance with fair lending laws and regulatory requirements, and Wells Fargo concedes that it asserts on its website, in advertisements, and in this litigation that it is a fair housing lender. However, it argues that the advice of Wells Fargo's Law Department regarding its fair lending methodologies is not at issue in this case. "Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Genentech*, 236 F.R.D. at 469. While Plaintiffs assert that the Law Department's internal legal advice, and the methodological materials upon which that advice rests, will be relevant because anything that involves fair lending will be relevant, Wells argues that this argument was specifically rejected by this District in *Genentech*.

Wells contends that it will not rely on the advice of its in-house counsel or the employees in the legal department as a defense to Plaintiffs' suit; these documents are therefore not "at issue" in this case. Wells argues that for this Court to hold otherwise would have a fatally chilling effect on its law department's ability to receive candid communication from non-lawyer company employees needed to develop their legal conclusions to properly advise the company.

Wells' argument that it has not cited attorney advice as part of an affirmative defense is well-taken and the Court finds insufficient indicia for waiver of privilege via assertion of an affirmative defense. The mere fact that Wells asserts its virtue as a fair housing lender does not make its attorneys' advice fair game for Plaintiffs' inquiry.

**Bank Examiner's Privilege**

Wells claims an additional basis of privilege for some of these documents, the bank examiner's privilege. Wells relies on Section 607(a) of the Financial Services Regulatory Relief Act of 2006. Congress mandated that submission of privileged information to a government regulator in the course of a supervisory or regulatory process does not waive the privilege as to any other person or entity. Wells claims that, as a federally chartered bank regulated by the Office of the Controller of the Currency ("OCC"), it has provided statistics methodologies and the results of those methodologies to the OCC pursuant to a fair lending examination by the OCC in 2007. These communications, argues Wells, are therefore protected from disclosure by the bank examiner's privilege, and were so properly identified on Wells' Privilege Log. Furthermore, according to Wells, Plaintiffs failed to follow the statutorily prescribed procedure for obtaining non-public information for a bank regarding regulatory activities - that is, they did not notify the OCC of the request and allow the agency an opportunity to be heard. *Overby v. US. Fidelity & Guar. Co.*, 224 F.2d 158 (5th Cir. 1955); *In re NextCard, Inc. Securities Litigation,* 2003 WL 23142199 (N.D.Cal. 2003). The court in that case found, "We do not think that any privilege has been waived by putting copies of the documents in the hands of the directors of the bank. Only in that way could the documents be effectively used for their whole purpose which was the adequate supervision and regulation of national banks. If the bank directors violated their trust and, without authority, showed copies of the examiner's reports to the bank's attorneys and auditors for the purposes of this litigation, it nevertheless remains true that, 'The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party.' Hence, any wrongful disclosure of these reports by the bank

directors cannot constitute a waiver of the Government's privilege. " *Overby*, 224 F.2d at 163 (internal citation omitted).

On reading *Overby*, the Court notes that the documents at issue in that case were bank examiners' reports, *created by the OCC and produced to the bank*, not the other way around, as in this case. In the *Overby* case the OCC, as the creator of the reports, was the holder of the privilege and entitled to assert it. This is not the situation here. Wells Fargo created these documents, not the OCC. The mere fact that Wells created the documents as part of its compliance with a regulatory scheme does not make them OCC documents. They were not created *by* the OCC, even if they may have been created *for* the OCC. (Def. Supp. Brief at p. 9) Accordingly they are not privileged under the bank examiner privilege. Any documents not created by the OCC for which the bank examiner privilege is the sole privilege claimed shall be produced to Plaintiffs.

**Failure to Meet and Confer**

Finally Wells Fargo claims that Plaintiffs failed to meet and confer regarding these documents and do not need the documents to conduct the statistical analysis to support their allegations. Wells contends that after it produces the loan level data, Plaintiffs' experts are free to analyze the data using their own statistical models, and therefore Plaintiffs fail to show a need to force Wells Fargo to reveal its internal privileged analysis or methodologies. The Court would ordinarily require that parties meet and confer to attempt to resolve their dispute but in this instance it would be futile to order these parties to meet and confer formally on this issue, since they have already argued before the Court and submitted supplemental briefing. This would merely create additional delay, when this issue initially came before the Court three months ago.

**Order**

The Court read and considered the pleadings and supplemental briefing and the arguments of counsel and the record in this case, and finds that reviewing a sample of the documents *in camera* is necessary for the Court to answer the threshold questions whether they are attorney-client communications, and whether they contain either nonprivileged facts or legal advice. Accordingly, it is hereby ordered that 268 pages, as a representative

sample of the documents at issue, be produced for *in camera* review. The documents at issue are specifically those documents that relate to the work of the Modeling Team. These documents include the raw statistical data produced by periodic regression modeling runs performed during the class period, the modeling documentation and modeling notes that describe the modeling runs and the methodologies used in them, and communications between members of the Modeling Team and other non-lawyer persons (Wells Fargo personnel or outside third parties) about the modeling runs. Wells Fargo shall produce to the Court for in camera review 268 pages of documents responsive to Plaintiffs' narrowed request for which it claims attorney-client or work product privilege.  Wells shall provide a declaration under penalty of perjury that these pages constitute a representative sample of the 268,000 pages of documents for which Wells claims privilege. In addition, Wells shall produce to Plaintiffs all documents for which it relies solely on the bank examiner privilege, with the exception of any documents which were created by the Office of the Comptroller of the Currency ("OCC"). If Wells Fargo claims privilege for any responsive documents which are not on its Privilege Log, it shall produce to the Court and Plaintiffs a Final Supplemental Privilege Log. Privilege shall be waived for any documents not listed on this or prior logs. Compliance shall be due within two weeks of issuance of this order.

IT IS SO ORDERED.

DATED: June 4,  2009

_____
JAMES LARSON
Chief Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIV-REF\08-1930\Order in Camera Review.wpd