1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re WELLS FARGO RESIDENTIAL
MORTGAGE LENDING
DISCRIMINATION LITIGATION

This Document Relates To:

    ALL ACTIONS
_____/

No. C 08-1930 MMC  (JL)

**ORDER DENYING DEFENDANTS'
MOTION TO COMPEL DISCOVERY
(Docket # 32)**

**Introduction**

    Plaintiffs' motion to compel production of documents and to participate in discovery

in good faith (Docket # 28), and Defendant's motion to compel production of documents

and further responses to discovery (Docket # 32) came on for hearing. Appearing for

Plaintiffs were Andrew Friedman, BONNETT FAIRBOURN FRIEDMAN & BALINT,

Phoenix, Arizona;  Gary Klein, RODDY KLEIN & RODDY, Boston, Massachusetts; Willow

Radcliffe, COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP, San Francisco.

Appearing for Defendant were Tyree Jones, REED SMITH, LLP, Washington, D.C.; David

Reidy, REED SMITH, LLP, San Francisco. The Court carefully reviewed and considered

the moving and opposing papers and the arguments of counsel at the hearing. The Court

ruled from the bench, granting in part and denying without prejudice in part Plaintiff's

motion, as reflected in the Minute Order, and granted Defendant's request for the

1   opportunity to further brief the issue of privilege of loan methodologies. The Court took

2   Defendant's motion under submission and hereby issues its order denying the motion.

3                              **Meet and Confer**

4          Parties met and conferred on these disputes by letter, email, and conference call.

5   Some counsel are outside the Bay Area, so those counsel are not required to meet and

6   confer in person.

7                    **FACTUAL BACKGROUND: PLAINTIFFS' CLAIMS**

8          In the five class actions consolidated in this Multi-district Litigation Proceeding,

9   Plaintiffs challenge Wells Fargo's lending practices as discriminatory under the Fair

10  Housing Act and Equal Credit Opportunity Act.  Plaintiffs Venturas, Rodriguez and Williams

11  also allege intentional discrimination under 42 U.S.C. §§ 1981 and 1982.

12         Plaintiffs allege that Wells Fargo has engaged in disparate impact racial

13  discrimination. The Complaint alleges that Wells Fargo developed and has uniformly

14  followed a "Discretionary Pricing Policy," a company-wide practice through which it

15  authorizes and incentivizes its loan officers, mortgage brokers and correspondent lenders

16  to impose subjective, discretionary loan charges and interest rate mark-ups. These charges

17  and rate increases are totally unrelated to the borrower's objective credit risk.

18         Wells Fargo carries out its Discretionary Pricing Policy as follows. When a consumer

19  applies for a loan, the loan officer, broker, or correspondent lender transmits the loan

20  application information to Wells Fargo for underwriting. Wells Fargo evaluates the risk of

21  the loan based on the borrower's credit and financial information contained in the

22  application (e.g., credit score, loan-to-value ratio, debt-to-income ratio, etc.). Based on the

23  applicant's objective credit and financial information, Wells Fargo determines that the

24  applicant qualifies for a risk-based interest rate, called a "par rate" -- the interest rate at

25  which the risk of the proposed loan is acceptable to Wells Fargo. Wells Fargo's par rates

26  are compiled and disseminated to its loan officers, brokers, and correspondent brokers

27  through "rate sheets" or by other means. That transmission generally takes place

28  electronically.

1    Plaintiffs' disparate impact discrimination claims do not challenge this objective
2    component of Wells Fargo's Discretionary Pricing Policy. As alleged in the Complaint, it is
3    Wells Fargo's policy of allowing loan officers, mortgage brokers and correspondent lenders
4    who arrange its loans virtually unfettered subjective decision-making authority to add
5    discretionary costs, fees and "mark-ups" to the par rate. Wells Fargo gives its brokers
6    discretion to impose non-risk based loan fees and interest rate markups (in addition to the
7    par rate) on loans to qualified borrowers.

8    Wells Fargo allows and encourages its loan officers, brokers and correspondent
9    lenders to – at their discretion – impose subjectively determined charges such as a yield
10   spread premium and other loan charges that have no relation to the risk of the loan by
11   providing enhanced compensation for doing so. Such non-risk based charges are typically
12   financed by the borrower over the life of the loan, resulting in a higher effective rate.

13   On its face, Wells Fargo's Discretionary Pricing Policy appears facially neutral. But
14   Plaintiffs allege that the loan fees and rate mark-ups subjectively imposed by loan officers,
15   brokers and correspondent lenders adversely impacts minority borrowers, causing them to
16   pay far more for their loans than similarly-situated non-minority borrowers. The disparate
17   impact is a direct result of Wells Fargo's Discretionary Pricing Policy because Wells Fargo
18   designed, disseminated and controlled the practice. Wells Fargo's Discretionary Pricing
19   Policy has led to hundreds of millions of dollars in unjustified and hidden costs to minority
20   homeowners across the United States.

21                                   **Plaintiff's Motion**

22   The Court ruled from the bench on this motion, granting in part and denying without
23   prejudice in part, and granted Defendant's request for the opportunity to provide the Court
24   with further briefing on the issue of attorney-client privilege for certain loan methodologies.

25                                   **Defendant's Motion**

26   Defendants ask this Court to order Plaintiffs to produce the following, within seven
27   days of the hearing on this motion:

28

United States District Court

For the Northern District of California

1    •    Information and documents regarding Plaintiffs' financial histories
2         (Interrogatory Numbers 4, 5, 8, and 9; Request for Production Numbers 3, 4,
3         and 6);
4    •    Information and documents regarding Plaintiffs' creditworthiness
5         (Interrogatory Numbers 3, 6, and 7; Request for Production Numbers 1, and
6         16); and
7    •    Information and documents regarding Plaintiffs' borrowing histories
8         (Interrogatory Numbers 2, 13, and 14; Request for Production Numbers 2 and
9         18).
10        Moreover, Wells contends that Plaintiffs agreed to supplement their responses to the
11   following requests, but have failed to do so:
12   •    Information and documents regarding Plaintiffs' financial and credit histories
13        (Interrogatory Numbers 1 and 5; Request for Production No. 14);
14   •    Detailed descriptions of Plaintiffs' alleged damages (Interrogatory No. 25);
15   •    Documents regarding Plaintiffs' borrowing histories (Request for Production
16        No. 2);
17   •    Information and documents the loan transactions at issue (Interrogatory
18        Numbers 10 and 12; Request for Production Numbers 8-12, and 17);
19   •    Information and documents substantiating Plaintiffs' allegations against Wells
20        Fargo (Interrogatory Numbers 16, 17, 19-21, 23-25, and 27; Request for
21        Production Numbers 13, 15, and 19-28);
22   •    Specifically, an explanation of the alleged "discretionary pricing policy"
23        (Interrogatory No. 19).
24        Wells Fargo argues that its discovery requests are proper and necessary to its
25   defenses in these actions and asks that the Court order Plaintiffs to provide the discovery
26   requested within seven days of the hearing on this matter
27        Wells Fargo, during the meet and confer process, which took place by letter,
28   reminded Plaintiffs that their Complaints allege that they were qualified for loans on better

United States District Court

For the Northern District of California

1   terms than the terms that they received solely on the basis of race. Given these allegations,

2   Wells Fargo argued that Plaintiffs' history of mortgage borrowing, their other real estate

3   holdings and investments, rental income, and creditworthiness, as well as their motivations

4   in and experiences with lending generally, were therefore relevant to Wells Fargo's

5   defenses in these consolidated actions.  Wells Fargo also asked that Plaintiffs produce all

6   documents responsive to its Requests for Production, as opposed to only producing

7   documents contained in their loan files, and all documents relating to their allegations of

8   discrimination contained in their Complaints.

9        Wells argues that Plaintiffs' objections on the basis of confidentiality and privacy are

10  without merit as this Court has already entered the Stipulated Protective Order governing

11  the treatment of confidential consumer information in this action. Furthermore, these

12  Interrogatories are narrowly tailored to obtain information concerning Plaintiffs' financial and

13  credit history, which information is discoverable because Plaintiffs have placed their

14  creditworthiness at issue by filing these actions. FRCP 26(b)(2) (discovery proper regarding

15  any non-privileged matters that are relevant to a party's claim or defense); *Kee v. R-G*

16  *Crown Bank*, 2007 WL 2406938, *2 (D.Utah, 2007) (defendant held entitled to discovery of

17  the plaintiff's bank accounts where plaintiff's claims put financial condition at issue); *Wilson*

18  *v. Super. Ct.,* 63 Cal. App. 3d 825, 830 (1976) (taxpayer's privilege held waived where

19  plaintiff placed in issue the existence and content of tax returns).

20       Wells argues that Plaintiffs' relevancy objections are similarly misplaced, because, in

21  their Complaints, Plaintiffs have expressly alleged that despite being qualified for mortgage

22  loans with favorable terms, they were given less favorable terms on account of racial

23  discrimination. See, e.g., Brown Complaint at ¶38; Rodriguez Complaint at ¶40. Given this

24  allegation, Wells Fargo argues it is entitled to discover what those qualifications for more

25  favorable loans were, rendering discovery of risk-based credit characteristics not only

26  relevant, but essential to Wells Fargo's defense of this action. According to Wells, Plaintiffs

27  also allege that because they are minority borrowers, they were steered into less favorable

28  loans, and, unbeknownst to them, Wells Fargo also utilized a subjective, discretionary

United States District Court

For the Northern District of California

1  pricing tool to arrive at the interest rates and fees charged on their loans. See, e.g.,

2  Williams Complaint at ¶15; Brown Complaint at ¶¶37, 38. Wells says that Plaintiffs further

3  allege that they were harmed as a result of this so-called "discretionary pricing policy" and

4  that members of the class did not know the terms, fees, and costs associated with their

5  loans. See, e.g., Williams at ¶62; Brown Complaint at ¶37. Given allegations such as these,

6  Wells Fargo is entitled to discover information regarding each Plaintiff's real estate acumen

7  and experience in applying for, obtaining, and accepting the terms of mortgage contracts.

8      Wells argues that, by filing their Complaints, Plaintiffs placed their creditworthiness,

9  borrowing histories, and financial conditions squarely at issue. As such, Plaintiffs' financial

10  backgrounds are directly relevant to their claims, and to Plaintiffs' ability to represent the

11  putative class, and is therefore within the scope of pre-certification discovery. See

12  Schwarzer, J., *California Practice Guide: Federal Civil Procedure Before Trial* (Rutter

13  Group rev. ed. 2004) p. 10-112.8, ¶ 10:740 (citing *Krim v. BancTexas Group, Inc.*, 99 F.3d

14  775, 777-78 (5th Cir. 1996)).

**Plaintiffs' Opposition**

16  Plaintiffs on January 14, 2009, the day Wells filed its motion to compel, filed

17  supplemental responses to Interrogatories No. 10, 12, 16, 17, 19, 20, 21, 23, and 27 and

18  Document Requests Numbers 8-13, 17, 19-22, 26 and 27. Plaintiffs oppose Wells' motion

19  to compel additional responses on the basis that Wells Fargo mischaracterizes Plaintiffs'

20  allegations in their Complaint in order to obtain personal confidential financial information to

21  intimidate and harass Plaintiffs.

22  According to Plaintiffs, Wells Fargo baldly claims that Plaintiffs have made this

23  information relevant by placing their qualification for a Wells Fargo loan at issue. But

24  Plaintiffs have done no such thing. Plaintiffs challenge as racially discriminatory

25  Defendant's loan pricing practice that has nothing to do with Plaintiffs' credit and financial

26  characteristics. Plaintiffs do not challenge Wells Fargo's consideration of their financial and

27  credit backgrounds in underwriting their loans. Plaintiffs do not claim that Wells Fargo

28

**United States District Court**
For the Northern District of California

1    discriminates against minorities in determining whether borrowers qualify for a "par" interest

2    rate based on their credit and financial information.

3        Rather, Plaintiffs claim that *after* Wells Fargo underwrote their loans and qualified

4    them at a particular par interest rate, it then authorized the broker, loan officer or

5    correspondent lender who arranged the loan to – at their discretion – add non-risk based

6    loan fees, charges and rate mark-ups. These subjectively-determined loan price increases

7    are unrelated to borrower risk, and have nothing to do with the applicant's financial or credit

8    standing. Plaintiffs intend to show that this discretionary pricing policy exerts a

9    discriminatory disparate impact because minority borrowers are saddled with higher

10   discretionary loan fees, charges and rate mark-ups than nonminorities with the same or

11   similar credit and financial characteristics. The financial and credit background of the

12   borrower – including Plaintiffs – is irrelevant because it has nothing to do with the allegedly

13   discriminatory loan pricing practice challenged here.

14       Plaintiffs argue that Wells Fargo's reason for demanding Plaintiffs' financial and

15   credit information is a pretext. Wells Fargo obtained all the financial and credit information

16   on Plaintiffs it deemed necessary when it underwrote their loans in the first place. The only

17   possible use of the information now is either to re-underwrite the loans or re-qualify

18   Plaintiffs for them, or to otherwise harass and intimidate Plaintiffs by delving into personal

19   financial information.

20       A look at Wells' Reply reveals Wells' true motivation for requesting Plaintiffs'

21   financial and credit history. "Plaintiffs allege disparate impact discrimination in the mortgage

22   credit application process. There can be no dispute that Wells Fargo is entitled to discover

23   information bearing on the veracity of the representations made by Plaintiffs during the

24   credit application process and the evidentiary bases for Plaintiffs' allegations."

25       Out of its own mouth, Wells confirms Plaintiffs' fear that what it wants to do is re-

26   qualify them, or disqualify them for credit. This would be prejudicial and intimidating to

27   Plaintiffs.

28       Wells is demanding sensitive confidential information which is not relevant to

Plaintiffs' claims or Wells' defenses. Plaintiffs complain of Wells policies that kicked in *after*

**United States District Court**
For the Northern District of California

1   a borrower had qualified for credit. At that point, Plaintiffs contend that Wells allowed

2   brokers and loan officers to tack on discretionary fees as part of its Discretionary Pricing

3   Policy, and that these fees were disproportionately assessed against minority buyers.

4   Plaintiffs do not allege that Wells improperly evaluated their creditworthiness.  Therefore,

5   their creditworthiness is not at issue here, and it would not be a defense for Wells to

6   accusations that it assessed improper fees against minority borrowers.

7          Plaintiffs successfully distinguish the cases cited by Wells in support of its motion to

8   compel. (See Pltf Opp. At 6) The plaintiff in the *Kee* case cited by Wells Fargo had placed

9   his financial information directly at issue. The defendant bank in that case had subpoenaed

10  the plaintiff's account  information for many transactions over a wide time frame from other

11  banks where the plaintiff-borrower had accounts, in addition to the bank of whose loan

12  Plaintiff complained. Even so, the court found the defendant's subpoena to be overbroad

13  because, as with Wells Fargo here, the defendant had requested information outside the

14  scope of the issues in the case. While the plaintiff sued the bank over a loan, the court

15  rejected the bank's attempt to obtain information about other accounts or transactions

16  unrelated in type and time to the transaction at issue. In fact the court in that case found

17  the subpoenas "appear to constitute the type of fishing expedition that is prohibited in

18  discovery under the federal rules," and limited production to "any and all documents relating

19  to checks written to Crown Bank and monthly balance information from October 2001 to the

20  present." *Kee* , 2007 WL 2406938 at *2.  In this case, Wells Fargo wants Plaintiffs to

21  provide a broad swath of their financial information related to their creditworthiness and

22  financial acumen. Plaintiffs claim that Wells discriminated against them by assessing

23  discretionary fees after they had already qualified for loans. The highly personal and

24  confidential data that Wells is demanding is not relevant to either Plaintiffs' claims or Wells'

25  defenses.

26         Plaintiffs also reject Wells' objections to their citing the loan files in Wells'

27  possession. (Def. Memo at 9 -10) Plaintiffs invoke FRCP 33(d) as permitting them to refer

28  to business records in response to an interrogatory, where the burden of ascertaining the

United States District Court

For the Northern District of California

1  answer is substantially the same for either party. Since Wells Fargo has Plaintiffs' loan files,

2  and in fact created them, it should have no trouble extracting the information.

3       In *Wilson v. Superior Court*, 63 Cal.App.3d 825, 830 (1976), cited by Wells,  the

4  court held not surprisingly that a taxpayer waives the "taxpayer privilege" under California

5  common law when she sues her accountant for negligently advising her of the tax

6  consequences of a sale of real property while preparing her tax returns. The court's holding

7  is inapposite here, where Plaintiffs are not claiming negligent processing of their loans, but

8  rather discrimination.

9       Plaintiffs in the *Kee* and *Wilson* cases had plainly placed their finances at issue.

10  Plaintiffs in this case, however, also deny that their financial or real estate sophistication or

11  acumen are at all relevant to either their claims or Wells' defenses. They cite a number of

12  cases for the proposition that individualized circumstances surrounding each transaction

13  were irrelevant where there was an allegation of a national policy allowing a subjective

14  mark-up, as Plaintiffs allege in this case. *Cason v. Nissan Motor Acceptance Corp.,* 212

15  F.R.D. 518 (M.D. Tenn. 2002) (court certified class of plaintiffs who claimed to have been

16  victims of a subjective mark-up of the finance rate for their car loans. The court noted that

17  the individualized circumstances surrounding each transaction were irrelevant to a national

18  policy of allowing such a subjective mark-up. Plaintiffs also cite *Coleman v. GMAC*, 220

19  F.R.D. 64 (M.D.Tenn. 2004) (refusing to consider individualized factors such as educational

20  background and understanding of credit).  (Pltf Opp. at 8) Plaintiffs also reject the notion

21  that any of their financial backgrounds might somehow be related to their ability to

22  represent the class. (Responding to Wells' Motion at 8).

23       This Court agrees that Plaintiffs' real estate sophistication and the purposes of their

24  loans: whether to buy a home, to finance investment property, or to obtain cash, are not

25  relevant to the question whether or not Defendant assessed discriminatory, discretionary

26  fees on borrowers. The information requested about Plaintiffs in Defendant's motion to

27  compel is irrelevant, and Wells' Motion to compel Plaintiffs' credit data and history is

28  denied.

**Contention Interrogatories**

1    Wells Fargo also demands that Plaintiffs supplement their answers to contention

2    interrogatories. Plaintiffs have already supplemented their answers to some of the

3    interrogatories, but some questions seek detailed damage information that Plaintiffs argue

4    they cannot provide without loan level data that Wells Fargo is improperly withholding.

5    Plaintiffs have moved to compel Wells Fargo to produce loan level data and other

6    information, and will answer the interrogatories after their experts have been able to

7    statistically analyze the loan data.

8    Plaintiffs aren't refusing to answer Wells' contention interrogatories, they just need

9    the loan level data to give to their experts for statistical analysis before they can answer.

10   FRCP 33(a)(2) authorizes a court to order that contention interrogatories "need not be

11   answered until the designated discovery is complete, or until a pretrial conference or some

12   other time." This case is still at the pre-certification stage. Wells has the burden of showing

13   how an early response to its contention interrogatories assists the goals of discovery, that

14   is, to significantly narrow the issues. *In re Convergent Technologies Securities Litigation*,

15   108 F.R.D. 328, 338 (N.D.Cal. 1985).

16   Neither Fed. R. Civ. P. 33(a)(2) nor applicable case law requires Plaintiffs to answer

17   the contention interrogatories until Wells Fargo has produced the information necessary for

18   them to do so. Plaintiffs ask the Court to deny Wells Fargo's demand for irrelevant

19   information and premature contention interrogatory answers as without merit, and deny its

20   Motion to Compel. This part of Wells' motion to compel is also denied, pending Wells'

21   production of the loan level data that Plaintiffs need to give to their expert for statistical

22   analysis before answering.

23   For all the above reasons, Defendant Wells Fargo's motion to compel further

24   discovery is denied.

25   IT IS SO ORDERED.

26   DATED: March 3,  2009

27

28   _____
     JAMES LARSON
     Chief Magistrate Judge

**United States District Court**
For the Northern District of California