United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   In re WELLS FARGO RESIDENTIAL          M: 08-CV-1930 MMC
     MORTGAGE LENDING DISCRIMINATION
12   LITIGATION                             **ORDER GRANTING THIRD-PARTY
     _____   DEFENDANT'S MOTION TO STRIKE
13                                          THIRD-PARTY COMPLAINT**

14   This Document Relates To:

15        ALL ACTIONS
     _____/
16

17        Before the Court is third party defendant Lendmark Mortgage Corporation's

18   ("Lendmark") "Motion to Strike Third-Party Complaint," filed June 23, 2010; plaintiffs have

19   filed a notice of joinder.  Defendant/third party plaintiff Wells Fargo Bank, N.A. ("Wells

20   Fargo") has filed opposition, to which Lendmark and plaintiffs have filed separate replies.

21   Having read and considered the papers filed in support of and in opposition to the motion,

22   the Court rules as follows.[1]

23                              **BACKGROUND**

24        Prior to December 4, 2009, the instant multidistrict litigation proceeded on the claims

25   alleged in individual complaints filed by, respectively, Ruby Brown ("Brown"), Judy A.

26   Williams ("Williams"), Gilbert and Tracy Ventura ("the Venturas"), and Juan and Josefina

27   Rodriguez ("the Rodriguezes").  On December 4, 2009, plaintiffs, upon stipulation of the

28   _____

        [1]By a Clerk's Notice filed July 22, 2010, the matter was taken under submission.

1  parties approved by the Court, filed a First Consolidated and Amended Class Action

2  Complaint ("FCAC"), in which plaintiffs included the claims alleged by Brown, Williams, the

3  Venturas, and the Rodriguezes, as well as claims by a new plaintiff, Howard

4  Queensborough ("Queensborough").

5         In the FCAC, plaintiffs, who obtained home mortgage loans from Wells Fargo, allege

6  that Wells Fargo's "credit pricing system" has a "discriminatory impact on minority

7  applicants for home mortgage loans" in violation of federal law.  (See FCAC ¶ 2.)  In

8  support thereof, plaintiffs allege that "after a finance rate acceptable to Wells Fargo is

9  determined by objective criteria (e.g., the individual's credit history, credit score, debt-to-

10  income ratio and loan-to-value ratios), Wells Fargo's credit pricing policy authorizes

11  additional discretionary interest rate markups, pricing exceptions and finance charges."

12  (See id.)  Two of the named plaintiffs, specifically, Brown and Williams, are alleged to have

13  obtained a mortgage directly from Wells Fargo (see FCAC ¶¶ 137, 146), while the

14  remaining named plaintiffs, specifically, the Venturas, the Rodriguezes, and

15  Queensborough, are alleged to have obtained a mortgage from Wells Fargo through a

16  mortgage broker (see FCAC ¶¶ 107, 117, 127).  With respect to those plaintiffs who

17  obtained loans through brokers, plaintiffs allege that Wells Fargo gave the brokers the

18  "discretion to provide for rate markups, discounts, points and fees . . . in amounts that are

19  unrelated to credit risk and other objective factors."  (See FCAC ¶¶ 46, 56.)

20         On December 28, 2009, Wells Fargo filed an answer to the FCAC.  Additionally, on

21  December 28, 2009, Wells Fargo filed a motion, pursuant to Rule 14(a) of the Federal

22  Rules of Civil Procedure, for leave to file a third party complaint against Phoenix Home

23  Loans ("Phoenix") and Schaefer Financial Services ("Schaefer"), who were the brokers

24  used by, respectively, the Venturas and the Rodriquezes.  See Fed. R. Civ. P. 14(a)

25  (providing defendant "must, by motion, obtain the court's leave" to file third party complaint

26  "more than 10 days after serving its original answer").  By order filed April 8, 2010, the

27  Court denied the motion for the reason that "plaintiffs [would] be disadvantaged by the

28  addition of the brokers to the action."  (See Order, filed April 8, 2010, at 3:11-12.)

2

1    Meanwhile, on December 29, 2009, one day after it filed its answer to the FCAC,

2   Wells Fargo, without leave of court, filed a third party complaint ("Third Party Complaint")

3   against Lendmark, the broker used by plaintiff Queensborough.

4                                              **DISCUSSION**

5    Lendmark argues that the Court, for the same reasons it denied Wells Fargo leave

6   to file a third party complaint against brokers Phoenix and Schaefer, should strike the third

7   party complaint filed against Lendmark.

8    Where a third party complaint is filed within ten days after the third party plaintiff's

9   "original answer" to the plaintiff's claims, the third party plaintiff need not obtain leave of

10   court to file the third party complaint.  See Fed. R. Civ. P. 14(a).  Here, as the Court has

11   previously noted, Wells Fargo filed its third party complaint against Lendmark "as of right"

12   (see Order, filed April 8, 2010, at 3 n.3), for the reason that Wells Fargo filed such pleading

13   within ten days after it filed its answer to plaintiffs' claims alleged on behalf of

14   Queensborough.  See Fed. R. Civ. P. 14(a).  Nonetheless, as Lendmark points out, a

15   district court retains discretion to strike a third party complaint filed as of right "if it is

16   obviously unmeritorious and can only delay or prejudice the disposition of the plaintiff's

17   claim."  See 1963 Advisory Committee's Notes on Fed. R. Civ. P. 14.

18    Here, as explained in detail in the Court's Order of April 8, 2010, inclusion in the

19   instant multidistrict litigation of third party claims by Wells Fargo against brokers would

20   unfairly prejudice the disposition of plaintiffs' claims.  In particular, Wells Fargo's claims

21   against brokers are "at best . . . tangential to the issues raised by plaintiffs' claims against

22   Wells Fargo" (see Order, filed April 8, 2010, at 3:19-20), implicate state laws not otherwise

23   at issue in the instant multidistrict litigation presenting only federal claims (see id. at 4:2-8),

24   and "will, of necessity, delay the expeditious resolution of plaintiffs' claims" (see id. at 4:10-

25   11).  These findings are equally applicable to Wells Fargo's claims against Lendmark.

26    Accordingly, for the reasons set forth in the Court's Order of April 8, 2010, the Court

27   finds that inclusion herein of Wells Fargo's claims against broker Lendmark will "delay" and

28   "prejudice" the disposition of plaintiffs' claims.  See 1963 Advisory Committee's Notes on

1   Fed. R. Civ. P. 14.

2          Further, as discussed below, the Court finds Wells Fargo's claims against Lendmark

3   are, for purposes of Rule 14(a), "obviously unmeritorious."  See id.

4          Because "Federal Rule of Civil Procedure 14(a) provides that a defending party may

5   implead a third party 'who is or may be liable to him for all or part of the plaintiff's claim

6   against him,'" see Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 777

7   (9th Cir. 1986) (quoting Fed. R. Civ. p. 14(a)), "a third-party claim may be asserted only

8   when the third party's liability is in some way dependent on the outcome of the main claim

9   and is secondary or derivative thereto," Stewart v. American Int'l Oil & Gas Co., 845 F.2d

10  196, 199 (9th Cir. 1988).  As the Seventh Circuit has observed, a third-party complaint

11  "presupposes liability on the part of the original defendant which he is attempting to pass on

12  to the third-party defendant."  See Parr v. Great Lakes Express Co., 484 F.2d 767, 769 (7th

13  Cir. 1973).

14         Here, Wells Fargo, in its third party complaint, alleges that plaintiffs have asserted in

15  the FCAC that Wells Fargo engaged in "intentional discrimination" against plaintiffs and

16  that "the Broker was complicit in this discrimination as Wells Fargo's 'Agent.'"  (See Third

17  Party Complaint ¶ 9.)  Further, Wells Fargo alleges, plaintiff have asserted in the FCAC

18  claims of "direct wrongdoing by his Broker."  (See Third Party Complaint ¶ 18.)  If plaintiffs

19  were, in fact, alleging in the FCAC that Lendmark had engaged in "intentional

20  discrimination" and "direct wrongdoing," and sought to hold Wells Fargo liable for such acts

21  as a principal, the subject third party complaint would appear to have merit.  See, e.g.,

22  Holley v. Crank, 400 F.3d 667, 670-74 (9th Cir. 2005) (holding "traditional rules of vicarious

23  liability apply" to violations of Fair Housing Act; remanding to district court to determine if

24  defendant was principal of agent who allegedly engaged in acts of intentional housing

25  discrimination).

26         Wells Fargo's allegations concerning the nature of plaintiffs' claims, however, are

27  based on an incorrect premise, as plaintiffs are not asserting a claim of "intentional

28  discrimination," either on the part of Wells Fargo or on the part of Lendmark, nor are

4

1   plaintiffs asserting any claim of "direct wrongdoing" on the part of Lendmark.  Rather, as

2   plaintiffs have clarified, plaintiffs are only proceeding under a theory of disparate impact,

3   which theory is premised on the alleged existence of Wells Fargo's  "Discretionary Pricing

4   Policy" (<u>see</u> Pls.' Opp. to Wells Fargo's Mot. for Leave, filed January 22, 2010, at 6:5-7),

5   and are not alleging that the actions of Lendmark, or any individual broker, caused the

6   asserted discriminatory impact (<u>see</u> id. at 7:5-8).[2]

7         In sum, Wells Fargo's claims for indemnification and contribution are based on an

8   erroneous reading of plaintiffs' complaint, specifically, that plaintiffs have alleged that

9   Lendmark engaged in intentional discrimination and wrongdoing and that Wells Fargo is

10   liable therefor based on principles of agency.  Consequently, the Court finds Wells Fargo's

11   claims are unmeritorious as third party claims brought pursuant to Rule 14(a).

12         Accordingly, the motion to strike will be granted.

13                               **CONCLUSION**

14         For the reasons stated above, Lendmark's motion to strike is hereby GRANTED,

15   and the Third Party Complaint is hereby STRICKEN.

16         **IT IS SO ORDERED.**

17

18   Dated:  July 30, 2010

19                               MAXINE M. CHESNEY

                                United States District Judge

20

21

22

23

24

25

26

27

----

28         [2]Wells Fargo does not contend that if the trier of fact were to find plaintiffs had demonstrated the alleged disparate impact, Lendmark would be liable to Wells Fargo.