IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re WELLS FARGO RESIDENTIAL MORTGAGE LENDING DISCRIMINATION LITIGATION<br><br>_____<br><br>This Document Relates To:<br><br>ALL ACTIONS.<br>_____/ | M: 08-md-01930 MMC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; DENYING DEFENDANT'S MOTIONS TO EXCLUDE; VACATING SEPTEMBER 9, 2011 HEARING; SCHEDULING NOVEMBER 4, 2011 STATUS CONFERENCE** |

  Before the Court is the Motion for Class Certification, filed October 13, 2010, by plaintiffs Gilbert Ventura, Sr., Tracy D. Ventura, Juan Rodriguez, Howard Queensborough, Ruby Brown, and Judy A. Williams.  Defendant Wells Fargo Bank, N.A. ("Wells Fargo") has filed opposition, to which plaintiffs have replied.  Also before the Court are the parties' respective supplemental memoranda, each filed August 19, 2011, by which the parties set forth their views as to the effect, if any, of <u>Wal-Mart Stores Inc. v. Dukes</u>, 131 S. Ct. 2541 (2011).

  Additionally before the Court are the following motions filed by Wells Fargo: (1) "Motion to Exclude Reports of Plaintiffs' Expert Howell E. Jackson Filed in Support of Plaintiffs' Motion for Class Certification," filed October 28, 2010; and (2) "Motion to Exclude Exhibits L and R to the Declaration of Wendy Harrison Filed in Support of Plaintiffs' Motion for Class Certification," filed November 22, 2010.  Plaintiffs have filed separate opposition to each, to which Wells Fargo has separately replied.

Having read and considered the papers filed in support of and in opposition to the above-referenced three motions, the Court deems the matters suitable for decision on the parties' respective written submissions, VACATES the hearing scheduled for September 9, 2011, and rules as follows.

## BACKGROUND

In the operative complaint, the First Consolidated and Amended Class Action Complaint ("FCAC"), filed December 4, 2009, plaintiffs, all of whom are either "Hispanic" or "black" (see FCAC ¶¶ 13-17), allege they each obtained a mortgage loan from Wells Fargo; some of the loans were "brokered" by a mortgage broker (see FCAC ¶¶ 107, 117, 127), while others were "originated" by Wells Fargo through a Wells Fargo's "retail branch" (see FCAC ¶¶ 137, 146).

According to plaintiffs, Wells Fargo "discriminated" against them by "giving them mortgage loans with less favorable conditions than were given to similarly situated non-minority borrowers." (See FCAC ¶ 45.)  Plaintiffs allege such discrimination was the result of Wells Fargo's "discretionary loan pricing procedures" (see id.), which procedures plaintiffs refer to as Wells Fargo's "Discretionary Pricing Policy" (see FCAC ¶ 2).  Plaintiffs describe the "Discretionary Pricing Policy" as follows:  "[A]fter a finance rate acceptable to Wells Fargo is determined by objective criteria (e.g., the individual's credit history, credit score, debt-to-income ratio and loan-to-value ratios), Wells Fargo's credit pricing policy authorizes additional discretionary interest rate markups, pricing exceptions and finance charges."  (See FCAC ¶ 2.)  In particular, according to plaintiffs, "Wells Fargo gives its loan officers and authorized mortgage brokers discretion to provide for rate markups, discounts, points and fees to borrowers in amounts that are unrelated to credit risk and other objective factors."  (See FCAC ¶ 46.)[1]

---

[1] In their briefing of the instant motion, plaintiffs further describe the challenged policy as follows: "'Discretionary pricing policy' is the term by which [p]laintiffs describe Wells Fargo's policy or practice of committing to the individuals who originated its loans the subjective decision-making authority to either raise the interest rate, impose certain loan fees, or both."  (See Pls.' Reply, filed December 23, 2010, at 5:22-25.)

Plaintiffs allege the "discretionary elements to Wells Fargo's loan pricing have a widespread discriminatory impact on minority applicants for home mortgage loans" (see FCAC ¶ 2), because minority applicants received loans with higher rates and/or fees than did "Whites with similar credit profiles" (see FCAC ¶¶ 92-95). Based on such alleged discriminatory impact, plaintiffs assert that Wells Fargo discriminated against them in violation of the Fair Housing Act ("FHA") and the Equal Credit Opportunity Act ("ECOA"). (See FCAC ¶¶ 184-197.)

Plaintiffs seek to proceed with their claims on behalf of a class, specifically, "[a]ll African-American and Hispanic borrowers who at any time since January 1, 2001 have been subjected to Wells Fargo's subjective discretionary pricing policies." (See Pls.' Mot., filed October 13, 2010, at 14:2-4; Pls.' Notice of Errata, filed October 21, 2010, at 1:5.)

**DISCUSSION**

A plaintiff, to be entitled to an order certifying a class, must "establish[ ] the four prerequisites of [Rule] 23(a)" of the Federal Rules of Civil Procedure, see Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996), specifically: "'(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.'" See Dukes, 131 S. Ct. at 2548 (quoting Rule 23(a)). Further, the plaintiff must establish "at least one of the three requirements listed in Rule 23(b)." See id.

Here, plaintiffs seek to proceed with their disparate-impact discrimination claims on behalf of a class of persons that appears to consist of one million or more persons.[2] The Court finds, and defendants do not disagree, that the element of numerosity is satisfied.

---

[2] According to plaintiffs, Wells Fargo, between 2001 and 2007, "made more than 825,000 loans to African-Americans and Hispanic borrowers located across the United States." (See Pls. Mot. at 14:13-15; Pls.' Notice of Errata.) Because a number of such loans likely were made to married couples, or otherwise made to more than one person, the size of the class in all likelihood exceeds 1,000,000 persons.

3

The Court next considers the element of "commonality," which element recently was clarified by the Supreme Court in Dukes. See id. at 2550. As is explained in Dukes, to establish commonality, the plaintiff must demonstrate that his claim and the claims of the class he seeks to represent "depend upon a common contention," which "common contention" is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." See id. at 2551.

The plaintiffs in Dukes alleged a claim of employment discrimination, basing their claim on Wal-Mart's "'policy' of allowing discretion by local supervisors over employment matters." See id. at 2554. Specifically, the plaintiffs therein asserted, "the discretion exercised by their local supervisors over pay and promotion matters violate[d] Title VII by discriminating against women," see id. at 2547, because "their local managers' discretion over pay and promotions [was] exercised disproportionately in favor of men, leading to an unlawful disparate impact on female employees," see id. at 2548.

The Supreme Court found the showing made by the Dukes plaintiffs was insufficient to establish commonality, and, consequently, that said plaintiffs were not entitled to proceed on behalf of a class. In particular, the Supreme Court held, Wal-Mart's policy of allowing discretion by supervisors was "just the opposite of a uniform employment practice that would provide the commonality needed for a class action." See id. at 2554 (holding such "policy" was "a policy against having uniform employment practices") (emphasis in original). Although noting that a disparate-impact claim conceivably could, under some circumstances, be based on a company's policy of "subjective decisionmaking," the Supreme Court held the plaintiffs in Dukes had failed to establish any such circumstances. In particular, the Supreme Court observed, the plaintiffs had "not identified a common mode of exercising discretion that pervades the entire company," see id. at 2554-55, particularly given Wal-Mart's "announced policy forbid[ding] sex discrimination" and Wal-Mart's imposition of "penalties for denials of equal employment opportunity," see id. at

//

4

2553.[3]  Although the Dukes plaintiffs relied on statistical evidence that assertedly established with respect to promotion decisions "statistically significant disparities between men and women at Wal-Mart," see id. at 2555, the Supreme Court found such showing insufficient to establish commonality, holding "merely proving that the discretionary system has produced a racial or sexual disparity is not enough." See id. at 2555 (emphasis in original).

Here, plaintiffs, in support of their argument that commonality can be established with respect to the challenged discretionary policy, rely on a statistical analysis performed by Howell E. Jackson, who opines that a regression analysis he performed demonstrates the "disparate impact of [Wells Fargo's] Discretionary Pricing Policy." (See Class Certification Report of Howell E. Jackson ¶ 7.)[4]  As discussed above, however, evidence that a "policy of discretion," see Dukes, 131 S. Ct. at 2556, produces a disparity is insufficient, by itself, to establish commonality for purposes of Rule 23(a), see id.  In this instance, plaintiffs allege the loan officers and mortgage brokers were given the discretion to add, with respect to any given mortgage loan, "unchecked, subjective surcharge[s]" of "interest rate markups" and/or "points and fees" to the "otherwise objective risk-based financing rate." (See FCAC ¶ 2.)  Plaintiffs fail, however, to offer any evidence to show a

---

[3] Wells Fargo likewise has an announced policy against discrimination.  In particular, Wells Fargo has a written policy that requires its employees to "price loans in a non-discriminatory manner" and provides that "[a]ny indication that disparate lending treatment is resulting from local pricing policies may lead to more restrictive overage caps or other disciplinary action including, but not limited to, termination of employment." (See Hunt Decl., filed November 22, 2010, Ex. D at 4.)  Another written policy requires mortgage brokers to comply with, inter alia, the ECOA (see Jones Decl., filed November 22, 2010, Ex. H), and Wells Fargo's Rule 30(b)(6) witness has testified that Wells Fargo has terminated its contractual relationship with brokers who have failed to comply with said policy (see Harrison Decl., filed October 13, 2010, Ex. A at 372:7 - 373:4, 397:12 - 399:2, Ex. M).

[4] By separate motions, Wells Fargo challenges respectively:  (1) the admissibility of plaintiffs' expert's statistical analysis, under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Rule 703 of the Federal Rules of Civil Procedure; and (2) the admissibility of two declarations, pursuant to Rule 37(c), on grounds of untimely disclosure.  For purposes of the Court's discussion herein, Wells Fargo's motions to exclude such evidence will be denied.

"common mode of exercising [such] discretion." See Dukes, 131 S. Ct. at 2554-55. Indeed, plaintiffs concede "the challenged discretion may have been exercised differently in each of [Wells Fargo's] millions of transactions." (See Pls.' Reply, filed December 23, 2010, at 1:11-14.)

The evidence submitted further points up plaintiffs' inability to show a common mode. The mortgage broker who brokered the loan obtained by plaintiff Juan Rodriguez ("Rodriquez"), for example, testified at his deposition that he generally "charge[s] anywhere between one to three points to borrowers depending on how hard the file is or how long it takes to work on it" (see Harrison Decl., filed December 23, 2010, Ex. B at 12:1-3), and, further, that some borrowers choose a "yield spread premium [YSP] option" instead of having points charged as closing costs, because the former option results in lower "upfront costs" (see id. Ex. B at 12:8-24); see also Bjustrom v. Trust One Mortgage Corp., 322 F.3d 1201, 1204 n.2, 1206 (9th Cir. 2003) (defining YSP as payment by lender to broker for delivering loan at interest rate above rate of lender's par value loan; holding YSPs not per se illegal under Real Estate Settlement Procedures Act ("RESPA")). The broker for plaintiff Rodriguez also testified "it was not an easy case" because Rodriquez sought a "90 percent loan" and had a "FICO"[5] score that was "not the . . . best of the FICOs out there." (See, e.g., Jones Decl., filed November 22, 2010, Ex. P at 14:14-21, 29:19-21.) The broker for plaintiffs Gilbert Ventura and Tracy Ventura testified that those two borrowers were a father and daughter, which circumstance required "two separate applications," and that their "credit history wasn't stellar." (See id. Ex. S at 54:24 - 55:24.)

How the numerous potential differences among prospective borrowers, both as to their stated goals and needs as well as their individual circumstances, such as creditworthiness, may bear on the determinations made by the many loan officers and brokers across the country cannot, at least on the showing made here, be determined on a

---

[5]"FICO refers to the Fair Isaac Corporation, which is the industry standard credit scoring system." Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463, 467 n.6 (3rd Cir. 2005). "FICO scores are based on a consumer's credit history." Id.

class-wide basis.  See Dukes, 131 S. Ct. at 2554; cf. Bjustrom, 322 F.3d at 1208-09 (holding, in class action challenging reasonableness of YSP under RESPA, named plaintiff failed to show broker's compensation was unreasonable, where broker obtained loan on "expedited basis" and named plaintiff paid lower amount of "cash up front" than she previously had paid; decertifying class to allow putative class members to "undertake to bring individual actions based upon their own distinguishing facts, if any").

In short, as the Supreme Court recognized in Dukes, where persons who are afforded discretion exercise that discretion differently, commonality is not established.  See Dukes, 131 S. Ct. at 2554 (noting some managers "may select sex-neutral, performance-based criteria," others "may chose to reward various attributes," and "still other managers may be guilty of intentional discrimination").  Although plaintiffs, in a supplemental brief filed after the Supreme Court issued its decision in Dukes,[6] endeavor to show Dukes is distinguishable from the instant action, plaintiffs' efforts in that regard are unpersuasive.

In support of such argument, plaintiffs first note the instant case does not involve a policy of discretion similar to that employed by Wal-Mart, because plaintiffs have alleged the terms of the subject loans are determined by a two-stage process, the first stage of which is a determination by Wells Fargo based on "objective criteria."  (See FCAC ¶ 2.) The "objective" component of the pricing policy, however, is not at issue here.  (See Pls. Mot. for Class Cert. at 1:15-16 ("Plaintiffs do not challenge the objective elements of Wells Fargo's loan pricing.").)  Plaintiffs also point out that a "common issue unifying [p]laintiffs and the class" is that all were "subject to the discretionary component of Wells Fargo's pricing policy" whereas "some of the [Dukes plaintiffs] may never have applied for a promotion or sought a pay increase."  (See Pls.' Supp. Mem. at 7:3-6.)  Any such distinction, however, is unavailing, for the reason that plaintiffs, as discussed above, have not "identified a common mode of exercising [such] discretion," see Dukes, 131 S. Ct. at

---

[6]Plaintiffs' motion was filed prior to the Supreme Court's decision in Dukes, and relied in large part on the Ninth Circuit's decision.  See Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010), rev'd, 131 S. Ct. 2541 (2011).

7

2554-55; in particular, plaintiffs have not shown that all, or even a substantial majority of, the loan officers and mortgage brokers who were afforded discretion to price one or more of the 825,000 loans challenged herein "exercise[d] their discretion in a common way," see id. at 2255.  Plaintiffs' remaining argument is that Dukes is distinguishable because, according to plaintiffs, the statistical analysis on which they rely is "more comprehensive and specific to the actual decision-making process at issue." (See Pls.' Supp. Mem. at 2:6-8; 9:14-16.)  As the Supreme Court held in Dukes, however, even if the statistical evidence offered therein had shown a pattern of disparity "in all of Wal-Mart's 3,400 stores," such statistical proof would fail, because "[m]erely showing that [a defendant's] policy of discretion has produced an overall [race]-based disparity does not suffice" to demonstrate commonality for purposes of Rule 23(a).  See Dukes, 131 S. Ct. at 2555-56 (emphasis in original).

In sum, plaintiffs have failed to make the requisite showing for class certification and, accordingly, the motion for class certification will be denied.

## CONCLUSION

For the reasons stated above,

1. Plaintiffs' motion for class certification is hereby DENIED; and

2. Wells Fargo's motions to exclude are hereby DENIED.

A Further Case Management Conference is hereby scheduled for November 4, 2011, at 10:30 a.m.  The parties shall file a Joint Case Management Statement no later than October 28, 2011.

**IT IS SO ORDERED.**

Dated: September 6, 2011

MAXINE M. CHESNEY
United States District Judge